IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-ct-03046-BO

| | |
|---|---|
| SAMUEL ELLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| KENNETH LASSITER, et al., ) | |
| ) | |
| Defendants. ) | |

On March 2, 2018, Samuel Ellis ("plaintiff"), a state inmate proceeding pro se and without prepayment of fees, filed a complaint under 42 U.S.C. § 1983. See [D.E. 1, 2, 7]. The court allowed the action to proceed, but denied plaintiff's request for injunctive relief [D.E. 8]. Plaintiff moved for, among other things, leave to file an amended complaint [D.E. 18]. The court granted plaintiff leave to amend [D.E. 22]. On December 11, 2018, plaintiff filed an amended complaint [D.E. 23].

Plaintiff's amended complaint is subject to initial review under 28 U.S.C. § 1915A. Although the court allowed plaintiff's original complaint to proceed, the court is not precluded from conducting such initial review again. See 28 U.S.C. §1915(e)(2) ("the court shall dismiss the case *at any time* if the court determines that . . . (B) the action or appeal–(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.") (emphasis added). Accordingly, the court conducts further initial review on plaintiff's earlier filings. For the reasons discussed below, the court dismisses the action.

Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief

may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not undermine the "requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009).

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). A section 1983 plaintiff also must allege the personal involvement of a defendant. See Iqbal, 556 U.S. at 676; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

### Plaintiff's Amended Complaint:

Plaintiff's amended complaint again generally alleges that state actors with North Carolina Department of Public Safety ("DPS") interfered with his practice of Wicca at Pender Correctional Institution ("Pender"), in violation of the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5.

2

See Am. Compl. [D.E. 23] at ¶1. Plaintiff again names as defendants: DPS Director of Prisons Kenneth Lassiter ("Lassiter"); DPS Director of Chaplaincy Services Betty Brown ("Brown"); and Pender Superintendent Bryan Wells ("Wells"). Id. at ¶¶ 9–11. Plaintiff now also seeks to add as defendants the following employees at Pender: Sergeant James ("James"); Correctional Officer ("CO") Trantham ("Trahtham"); and CO Hernandez ("Hernandez"). Id. at ¶¶ 12–14.

Plaintiff reiterates many of the claims from his initial complaint. Compare Am. Compl. [D.E. 23] at ¶¶ 20–28, with Compl. [D.E. 1] at ¶¶ 11–22. Plaintiff again alleges that a "Wiccan Bible" ("the book") was confiscated by Pender mail-room staff.[1] Am. Compl. [D.E. 23] at ¶¶ 20–23. Plaintiff also again alleges that DPS policies discriminate against Wicca practitioners. Id. at ¶¶ 24–28. Plaintiff initially alleged that Wiccans are only allowed eight services per year and that DPS does not allow Wiccans to celebrate "monthly Esbats" with the new and full moons. See Compl. [D.E. 1] at ¶¶16–18. In his amended complaint, by contrast, plaintiff admits that, after he filed this action, Pender policy subsequently was amended to officially allow the observation of Wiccan "Esbats," but he asserts such services had not yet occurred. Am. Compl. [D.E. 23] at ¶ 24. Plaintiff again contends that, although Wicca is a "nature based" religion, DPS has denied specific ceremonial items or required that substituted items be a photograph of the item or made from "synthetic materials such as Styrofoam." Id. at ¶25. Plaintiff again alleges that, unlike other faith groups, Wiccan prisoners are denied weekly religious "study time." Id. at ¶26. Plaintiff further alleges that another DPS policy–suspending services for religious groups without an "outside volunteer" leader and six persons in attendance–is arbitrary and discriminatory because, although an "inmate faith

---

[1] Plaintiff elsewhere identifies the book as "A Witches' Bible–The Complete Witches Handbook" by Janet and Stewart Farrar. See Am. Compl. [D.E. 23] at ¶ 35.

3

helper" may substitute when an "outside volunteer" is unavailable, becoming an "inmate faith helper" makes that individual "a 'target' for frivolous write-ups," and because the hypothetical absence of the "inmate faith helper" would lead to cancellation of services. Id. at ¶27. Plaintiff again contends that finding an "outside volunteer" for Wiccan services also is difficult "because of the harassment and prejudices they are subjected to by NCDPS staff." Id. at ¶28.

Plaintiff now also contends that he was the victim of retaliation for filing this action. Plaintiff alleges that, after an infraction on June 3, 2018, plaintiff was transferred to protective housing. Id. at ¶¶ 29–30, 33. When Trantham delivered plaintiff's property to protective housing, various personal items, including legal documents and religious property, were damaged or missing. Id. at ¶¶ 29–30. Plaintiff alleges that James, Trantham, and Hernandez processed his property on that date. Id. at ¶ 31. When plaintiff later sought the return of the missing property, he "was told his art supplies were 'tied up in litigation' since [plaintiff] filed a lawsuit." Id. at ¶ 34. Plaintiff asserts that, shortly after this action was allowed to proceed, plaintiff's "minor write-up" on April 11, 2018, for "having a couple of over-the-counter cold pills in the same bottle with his acid reflux medication, Pepcid, and 'white out'" was "brought to bear." Id. at ¶ 32. Plaintiff alleges prisoners ordinarily are not punished so distant in time from the infraction date. Id.

Plaintiff seeks the following relief: a declaration that defendants Lassiter, Brown, and Wells violated the First Amendment and RLUIPA and substantially burdened plaintiff's religious practice by denying him the book; a declaration that defendants Wells, James, Trantham, and Hernandez violated plaintiff's constitutional rights "by the willful and deliberate damage and loss of plaintiff's personal, legal, and religious property in retaliation for plaintiff's exercising his right to access the courts"; an injunction ordering that the book be removed from the DPS banned publication list and

4

be delivered to plaintiff; an injunction ordering defendants Lassiter, Brown, and Wells to implement new policy that mirrors the Wiccan religious policies of the Federal Bureau of Prisons and abolish DPS policies as to the "faith-group helper" and "six-person attendance" requirements; an injunction allowing Wiccan inmates to possess certain personal religious property, directing chaplaincy services to supply corporate religious items, and provision of "the 'feast meal' at the conclusion of the eight seasonal Sabbats"; an "injunction requiring that a permanent outdoor 'circle' and 'fire pit' be constructed and that Wiccan services be conducted outdoors unless inclement weather causes the service to be held indoors" and requiring "the institution's chaplaincy service [to] provide grape juice and some form of plain sweet cake or sweet bread for the 'wine & cake' ritual which is a part of every Wiccan Sabbat and Esbat."; an injunction ordering defendants Wells, James, Trantham, and Hernandez to replace plaintiff's court transcripts; compensatory damages for the loss of personal, legal, and religious property; and attorneys fees. Id. at 13–16.

## Discussion:

Here, plaintiff's contentions are either moot or fail to state a claim upon which relief can be granted. Due to plaintiff's intervening transfer to Albemarle Correctional Institution, see [D.E. 24], plaintiff's specific claims seeking declaratory and injunctive relief premised on purported RLUIPA and First Amendment violations at Pender, such as the lack of religious "study time" for Wiccan inmates, see Am. Compl. [D.E. 23] at ¶ 26, appear to be moot. See Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." (citation omitted); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (a prisoner's transfer mooted his request for declaratory and injunctive relief but not as to monetary damages). Because

5

there is no indication that plaintiff will be returned to Pender, and because plaintiff has not alleged a "real and immediate threat" of repetition of the alleged violations specific to Pender, the court does not discern that any exception to the mootness doctrine applies. See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Williams v. Ozmint, 716 F.3d 801, 809–10 (4th Cir. 2013).

Next, the court reviews plaintiff's more general assertion that DPS policy as to Wicca violate his First Amendment and RLUIPA rights. Plaintiff's contention that DPS policy only allows Wiccans eight services per year, but not "monthly Esbats," is contradicted by plaintiff's own subsequent amended complaint. Compare Compl. [D.E. 1] at ¶¶16–18, with Am. Compl. [D.E. 23] at ¶ 24. Moreover, in similar case involving another North Carolina inmate, the court made a factual finding that, as to Wicca practice, the DPS Religious Practices Manual states, "thirteen special days called 'Esbats' or Full Moon Celebrations may be observed, however, these celebrations are subject to approval of the facility head and shall in no way interfere with work assignments." Utt v. Brown, No. 5:12-CT-3132-FL, 2015 WL 5714885, at *4 (E.D.N.C. Sept. 29, 2015). Thus, contrary to plaintiff's assertion, the policy purportedly precluding plaintiff from celebrating monthly Esbats appears to be Pender, not DPS, policy. Accordingly, this claim also is mooted either by plaintiff's transfer or by the acknowledged change in Pender policy. See Rendelman, 569 F.3d at 186.

Plaintiff's other complaints as to DPS policy under both RLUIPA and the First Amendment fail on the merits. RLUIPA provides that governments may not impose a substantial burden on the religious exercise of an inmate unless the government demonstrates both that the burden furthers a compelling governmental interest and that the burden is the least restrictive means of furthering that interest. See 42 U.S.C. § 2000cc-1; Holt v. Hobbs, 135 S. Ct. 853, 860 (2015). A free exercise claim under the First Amendment also requires plaintiff to show, among other things, substantial

6

burdening of his religious exercise. See Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). The "substantial burden" standard for a RLUIPA claim is the same as that for a Free Exercise claim. See Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (noting a prisoner's free exercise right is substantially burdened if a government policy "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." (internal citations and quotation marks omitted)).

Plaintiff specifically challenges DPS policies as to "faith-group helper," "outside volunteer," and "six-person attendance" requirements. See Am. Compl. [D.E. 23] at ¶¶ 27–28. The court agrees that, as this court found in a prior case addressing this particular issue, "DPS's requirement of a quorum or outside volunteers does not burden plaintiff's religious practice." Jasmaine v. Daughety, No. 5:15-CT-3294-FL, 2018 WL 4623643, at *14 (E.D.N.C. Sept. 26, 2018) (collecting cases), aff'd in part, dismissed in part sub nom. Jasmaine v. Futrelle, 758 F. App'x 329 (4th Cir. 2019).

As to plaintiff's request for injunctive relief–seeking: a change of DPS policy allowing for the return of the book; the allowance of certain personal religious properties; the construction of an outdoor worship area including an outdoor circle and fire pit; and the provision of various corporate religious property including items for the "wine and cake ritual" and "feast meals" after seasonal Sabbats–plaintiff fails to colorably allege these deprivations, purportedly caused by DPS policies, substantially burden his religious practice. See, e.g., Krieger v. Brown, 496 F. App'x 322, 326 (4th Cir. 2012) ("Because Krieger did not show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs, the district court correctly determined that Krieger failed to establish a prima facie case under RLUIPA."); Gelford v. Frank, 310 Fed. App'x 887, 889 (7th Cir. 2008) (finding Wiccan inmates failed to demonstrate that prison's failure to provide them with requested divination tools, including a pendulum,

7

substantially burdened their religious practice); Living Water Church of God v. Charter Twp. of Meridian, 258 Fed. App'x. 729, 739 (6th Cir. 2007) (finding no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion); Jasmaine, No. 5:15-CT-3294-FL, 2018 WL 4623643, at *14 (E.D.N.C. Sept. 26, 2018) (noting that,"at a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious item or observance was more than an inconvenience to one's religious practice." (citations and internal quotation marks omitted); Long v. Vaughan, No. 5:14-CT-3117-BO, 2015 WL 12942478, at *2 (E.D.N.C. Dec. 17, 2015) ("Here, plaintiff has similarly failed to demonstrate that the denial of his silver chalice and stone bowl work a substantial burden on his religion. Though the Court notes the premium Wicca places on nature and natural products, plaintiff has not included sufficient facts to demonstrate that use of a Styrofoam cup and bowl substantially burdens his religious practices. This position is underscored by plaintiff's own "Wicca sponsor," Darla Kaye Wynne, who observed that "[t]o practice Wicca, one truly only needs oneself and a book of shadows."), aff'd, 652 F. App'x 176 (4th Cir. 2016); Gordon v. Mullins, No. 7:12cv00494, 2014 WL 1118199, at *6 (W.D.Va. Mar. 20, 2014) ("Although denying [plaintiff] the ability to choose which books he kept may have made it more difficult, inconvenient, or expensive for him to understand and practice his faith, that does not rise to the level of a substantial burden."), aff'd, 582 F. App'x 248 (4th Cir. 2014).

Although he seeks to require DPS to rewrite its Wicca religious policy to align with the policies of the Federal Bureau of Prisons, plaintiff also fails to show the requisite exceptional circumstances or meet the exacting standard required for such injunctive relief. See Winter v. Nat.

8

Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Cutter v. Wilkinson, 544 U.S. 709, 723 (2005) (under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." (quotation omitted)); Taylor v. Freeman, 34 F.3d 266, 268–269 (4th Cir. 1994) ("Even where there has been a finding on the merits that unconstitutional conditions exist, federal courts should proceed cautiously and incrementally in ordering remediation so as not to assume the role of prison administrators.").

Although plaintiff seeks compensation for the loss of, or damage to, his property, negligent actions of government employees are insufficient for a finding of section 1983 liability. See Daniels v. Williams, 474 U.S. 327, 330 (1986). Further, even if either Pender mail room staff or defendants James, Trantham, and Hernandez deliberately lost or damaged plaintiff's property, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Mora v. City of Gaithersburg, 519 F.3d 216, 231 (4th Cir. 2008). Plaintiff has a meaningful postdeprivation remedy available in North Carolina state court. See Wilkins v. Whitaker, 714 F.2d 4, 6–7 (4th Cir. 1983). Thus, plaintiff fails to state a constitutional deprivation-of-property claim.

To the extent plaintiff instead alleges that defendants' confiscation of, or damage to, his religious property violates the First Amendment, see Am. Compl. [D.E. 23] at ¶¶ 30, 37, plaintiff again fails to colorably allege that defendants' actions substantially burdened the practice of his religion. Cf. Lovelace, 472 F.3d at 187; see also Utt, No. 5:12-CT-3132-FL, 2015 WL 5714885, at *3 (E.D.N.C. Sept. 29, 2015) (noting that, "in developing it's Wicca policies" for the Religious

9

Practice Manual, "DPS consulted outside sources, including Darla Kaye Wynne, the Assistant National Director of Witches Against Religious Discrimination, Inc.[,]" and "Ms. Wynne informed DPS that '[t]o practice Wicca, one truly only needs oneself and a book of shadows.'" (internal citations omitted)). Moreover, plaintiff admits the book contained depictions of nudity. See [D.E. 4] at 5–6. Thus, even presuming that the confiscation of the book did substantially burden plaintiff's religious practice, the court nevertheless likely would uphold the DPS policy deeming such depictions of nudity as contraband as "reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89 (1987); see also O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (applying the four-factor Turner test to a prisoner's Free Exercise Clause claim).

As to the claim of retaliation, in order to survive initial review, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. A plaintiff must allege specific facts supporting the claim; bare assertions of retaliation do not establish a claim of constitutional dimension. Id. at 74–75. Retaliation claims generally are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quotation omitted).

Here, on the dates on which plaintiff alleges retaliation–June 3 and April 11, 2018–plaintiff was cited for multiple disciplinary infractions. See N.C. Dep't of Pub. Safety, Offender Pub. Info https://webapps.doc.state.nc.us/opi/viewoffenderinfractions.do?method=view&offenderID=0120 737&listpage=1&isturl=pagelistoffendersearchresults&searchOffenderId=0120737&obscure=Y( (last visited October 30, 2019) (June 3, 2018, infractions: possession of no threat contraband, theft of property, high risk act, and weapon possession. April 11, 2018, infractions: possession of no

10

threat contraband and sell/misuse of medication). Plaintiff alleges that the infraction findings, administrative punishments, and accompanying confiscations were retaliation against him for filing this action. Plaintiff, however, does not allege that he was wrongfully found to have committed these infractions. Further, although plaintiff specifically connects defendants James, Trantham, and Hernandez to the damage to plaintiff's property, plaintiff's claim that these defendants engaged in retaliatory conduct is speculative, and the statement that "his art supplies were 'tied up in litigation' since [plaintiff] filed a lawsuit," Am. Compl. [D.E. 23] at ¶ 34, is not ascribed to any defendant. Cf. Iqbal, 556 U.S. at 676 (requiring a defendant's personal involvement). Succinctly stated, plaintiff's bald allegations of retaliation are insufficient to survive initial review. See id. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555 (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level"); Cochran, 73 F.3d at 1317; Adams, 40 F.3d at 74.

To the extent the plaintiff alleges denial of access to courts, prisoners have a right to reasonable access to state and federal courts and to communicate with attorneys. See Ex Parte Hull, 312 U.S. 546, 549 (1941); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978) (per curiam). However, in order to state a claim for denial of access to courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct or show his efforts to pursue a legal claim were hindered. See Lewis v. Casey, 518 U.S. 343, 351–52 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006); Cochran, 73 F.3d at 1316. Although plaintiff alleges the loss of court transcripts, legal work, and research, see Am. Compl. [D.E. 23] at ¶ 30, plaintiff fails to state an access to courts claim because he does not "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Lewis, 518 U.S. at 353.

11

Conclusion:

For the reasons discussed above, plaintiff's claims are DISMISSED either as moot or because plaintiff fails to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. §1915(e)(2)(B)(ii). The clerk shall close the case.

SO ORDERED, this ___ day of November, 2019.

TERRENCE W. BOYLE
Chief United States District Judge

12